# EXHIBIT J

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

* * *

AUGUSTINE BOCELLI,

    Plaintiff,

  vs.              CASE NO. 2:15-cv-06313-NIQA

OWENS & MINOR

DISTRIBUTION, INC. and

CROWN EQUIPMENT CORPORATION,

    Defendants.

* * *

    Deposition of RONALD GRISEZ, Witness herein, called by the Plaintiff for cross-examination pursuant to the Rules of Civil Procedure, taken before me, Kathy S. Wysong, a Notary Public in and for the State of Ohio, at the offices of Mike Mobley Reporting, 334 South Main Street, Dayton, Ohio, on Tuesday, May 2, 2017, at 9:18 a.m.

* * *

Bocelli, Augustine v. Owens & Minor Distribution, Inc., et al.                                Ronald Grisez

Page 33

1        Q.   At the time that the truck was
2   developed for use in confined spaces, did Crown
3   know that increased risk of injury was something
4   that could happen with use of pallet trucks in
5   confined spaces?
6        A.   No, I wouldn't say that we felt that
7   using the truck in a confined space would
8   necessarily increase the risk of injury.  One of
9   the features that Crown has added to the truck to
10  accommodate using the trucks in confined spaces
11  would be what's called the brake override feature.
12       Q.   Brake override means that travel is
13  possible even when the operation handle is in the
14  standard braking area; is that accurate?
15       A.   Yes.  The handle has been placed into
16  the brake zone so when the handle is moved from
17  the drive zone or travel zone into the brake zone,
18  the brakes are applied.  But in the override
19  position, the operator can again ask for travel,
20  which is limited to one mile an hour.  But the --
21  in that position, the control handle itself is
22  within the running lines of the truck so that the
23  handle can be manipulated or moved and still be
24  within the running lines of the truck.
25       Q.   And if the handle is swiveled far to

Case 2:15-cv-06313-NIQA   Document 59-10   Filed 09/28/17   Page 4 of 10

Bocelli, Augustine v. Owens & Minor Distribution, Inc., et al.                                      Ronald Grisez

Page 37

 1   **potential difference, is that why there's no**
 2   **measurements on any of the pictures that were**
 3   **provided in any of the materials about exactly how**
 4   **many degrees up the handle needs to be in order to**
 5   **activate the braking zone?**
 6           A.   I guess as I sit here, I can't
 7   explain why there's no dimensions on these
 8   particular prints.  I'm not aware.
 9           **Q.   Are you aware of any drawings during**
10   **either the design, development, or manufacturing**
11   **stages where those dimensions were put on paper?**
12           A.   I believe they were, yes.
13           **Q.   Okay.  So when the handle is in the**
14   **override braking zone, the truck is still able to**
15   **accept a command to go forward or backward; is**
16   **that fair to say?**
17           A.   After the brake command has been
18   given because the handle has been moved from a
19   travel position to a brake zone, so brake is
20   always initiated when you put the handle into that
21   zone, and then if the operator chooses to utilize
22   the brake override, they can again request travel
23   but, again, at the lower travel speeds of one mile
24   an hour maximum.
25           Q.   Can you tell me how this function was

Bocelli, Augustine v. Owens & Minor Distribution, Inc., et al.                                                Ronald Grisez

Page 38

1   **developed at Crown and who developed it?**
2           A.   The -- I can't say exactly how it was
3   developed, but it was developed back when we
4   released the WP-2000 back in the year 2000; and
5   this design was patented in Europe but it was
6   developed in our Germany -- sorry, Munich, Germany
7   headquarters.
8           **Q.   Do you know whether or not Crown**
9   **utilized or worked with any other entities or**
10  **individuals in order to develop the brake override**
11  **feature?**
12          A.   I'm not aware of anyone being --
13  outside of Crown being used to develop this.  And
14  I guess to go back to your previous question,
15  sorry, I mean, one of the main purposes of the
16  brake override is to be able to turn in tight
17  quarters with the control handle in the upright
18  position so that it's within the running lines of
19  the truck.  That's the primary driver for using
20  brake override.
21          **Q.   Right.  What I'm asking you is about**
22  **who developed it.  So my question is, did Crown --**
23  **only Crown engineers take part in developing it?**
24          A.   I wouldn't say only Crown engineers,
25  but it was Crown personnel that worked on it.

Case 2:15-cv-06313-NIQA   Document 59-10   Filed 09/28/17   Page 6 of 10

Bocelli, Augustine v. Owens & Minor Distribution, Inc., et al.                                    Ronald Grisez

Page 53

1  because whether standard operation or brake
2  override, you still want to stay out of the path
3  of travel, and that, again, doesn't matter --
4         Q.   But you need to be more careful using
5  brake override, right?
6         A.   Well, irregardless, you still need to
7  stay out of the path of travel whether it's in
8  brake override or in normal travel.
9         Q.   Right.  But be more careful when you
10 use brake override, right?
11        A.   That's what the -- that's what the
12 operator manual indicates here, but the premise is
13 that you still want to stay out of the path of
14 travel irregardless if it's in brake override or
15 in a wide open space.
16        Q.   Okay.  And you agree with what's
17 written in the Crown materials here; is that
18 right?
19        A.   I have no reason to disagree with it.
20        Q.   And brake override used in confined
21 spaces, that's what its purpose is, correct?
22        A.   That's correct.  It's designed to be
23 used with the handle in the vertical position to
24 maneuver in tight quarters.  That's correct.
25        Q.   All right.  So then by extension, if

Case 2:15-cv-06313-NIQA   Document 59-10   Filed 09/28/17   Page 7 of 10

Bocelli, Augustine v. Owens & Minor Distribution, Inc., et al.                                    Ronald Grisez

Page 89

1   **time that the truck would be moving without the**
2   **operator's hands even on it?  Has that ever been**
3   **tested?**
4         A.   I'm not sure I understand -- I guess
5   I'm not sure I understand.  When the handle --
6         **Q.   Yeah, it's probably a very poor and**
7   **confusing question.  What I'm trying to ask is did**
8   **Crown ever determine whether or not it would be a**
9   **good idea to test any sort of system that would**
10  **stop the truck immediately if the operator's**
11  **hands, both hands, were removed from the handle?**
12  **For instance, if the operator fell down or if the**
13  **operator just let go.**
14        A.   I guess no, we have not.  We have in
15  place what we believe is a very reasonable design,
16  is that when the operator releases the handle,
17  mechanically it returns to the full upright
18  position and that's when the parking brake is
19  applied.  If the operator wants the truck to stop
20  sooner, then they can force the handle to the full
21  upright position which would be quicker.
22        **Q.   There would still be a point in time**
23  **where the wheel would have to come to a stop and**
24  **the parking brake would have to apply for it to**
25  **stop and not have any unexpected movement, fair to**

Case 2:15-cv-06313-NIQA   Document 59-10   Filed 09/28/17   Page 8 of 10

Bocelli, Augustine v. Owens & Minor Distribution, Inc., et al.                                    Ronald Grisez

Page 120

1    whether that's where it was shipped to or not,
2    based off of this document, that's what it would
3    appear.  But I'm not one hundred percent sure if
4    it was shipped directly to Owens & Minor or it was
5    shipped directly to Omnilift, but it appears to
6    have been shipped to Owens & Minor.
7         Q.   Okay.  And if you could take a look
8    at the document marked AB:3.  And I could just be
9    confused and reading the documents incorrectly.
10        A.   Okay.
11        Q.   Do you know based on your review of
12   this document whether or not the WP truck was
13   shipped directly to Owens & Minor or was it
14   shipped to Omnilift, Inc.?
15        A.   I mean, looking at this, it says
16   shipped to Owens & Minor, so that's how I would
17   read it.
18        Q.   Okay.  What involvement did Omnilift,
19   Inc. have with respect to this particular WP truck
20   when it was shipped initially to Owens & Minor?
21        A.   My understanding is that Owens &
22   Minor would have been the installing dealer so
23   they would have -- whether it was at their
24   facility or whether it was at Owens & Minor, they
25   would have still performed a predelivery

Case 2:15-cv-06313-NIQA   Document 59-10   Filed 09/28/17   Page 9 of 10

Bocelli, Augustine v. Owens & Minor Distribution, Inc., et al.                                    Ronald Grisez

Page 121

1  inspection to make sure the truck was working
2  properly, and then in accordance to this document,
3  would have still discussed with the customer the
4  operator's manual, the service manual, who's going
5  to perform planned maintenance, et cetera that's
6  all listed at the bottom of this particular
7  document.
8           Q.   And I just want to make sure your
9  testimony is accurate.  I think you -- and I could
10 have misunderstood it.  I think you said Owens &
11 Minor was your installing dealer.  Did you mean
12 Omnilift?
13          A.   Yes.  Sorry.  Sorry.
14          Q.   Okay.  Was Omnilift your authorized
15 dealer in the Allentown area for your Crown
16 equipment?
17          A.   Yes, I believe so.
18          Q.   Okay.  Do you have any direct
19 involvement dealing with Omnilift in the Allentown
20 area?
21          A.   No.
22          Q.   Does Crown provide training to its
23 authorized dealers for these particular WP trucks?
24          A.   I believe with all of our particular
25 models, including the WP, I believe we provide a

Case 2:15-cv-06313-NIQA   Document 59-10   Filed 09/28/17   Page 10 of 10

Bocelli, Augustine v. Owens & Minor Distribution, Inc., et al.                                         Ronald Grisez

Page 123

1       Q.   Do you know if Omnilift, as your
2   authorized dealer, offered any training specific
3   to this particular WP truck model prior to
4   November 2014?
5       A.   I believe they would have.  Again,
6   going back to AB:3, one of the reviews with the
7   customer indicates the availability of Crown
8   operator training material.
9       Q.   Okay.
10      A.   So it could have been the material or
11  it could have been the training; but either way,
12  they would have let them know it was available, I
13  believe.
14      Q.   Okay.  When was this particular model
15  manufactured?  I'm sorry.  Strike that.
16           When was this particular WP truck
17  manufactured?
18      A.   I believe the truck was manufactured
19  in March of 2014.
20      Q.   And at the time of the plaintiff's
21  accident, was this within its one-year warranty
22  with Crown?
23      A.   That's correct.
24      Q.   Were any warranty claims made to
25  Crown on this particular WP truck prior to the